United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 28, 2022

Nathan Ochsner, Clerk

### IN THE UNITED STATED BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 21-32250** |
| **SAMURAI MARTIAL SPORTS, INC.,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | **CHAPTER 11** |

## <u>MEMORANDUM OPINION</u>

Samurai Martial Sports, Inc. seeks to modify its subchapter V plan of reorganization pursuant to 11 U.S.C. § 1193(c). Subchapter V trustee Allison D. Byman and BankUnited N.A. object to the modified plan. On August 18, 2022, the Court conducted a hearing and for the reasons stated herein, subchapter V trustee Allison D. Byman and BankUnited N.A.'s objections are sustained in part and overruled in part. Samurai Martial Sports, Inc.'s motion to modify its subchapter V plan, is denied.

## I.   FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

## A. Background

1. On July 2, 2021, ("*Petition Date*") Samurai Martial Sports, Inc. ("*Debtor*") filed for bank-ruptcy protection under subchapter V, chapter 11 of the Bankruptcy Code[1] initiating the bankruptcy case.[2]

2. On July 7, 2021, Allison D. Byman was appointed subchapter V trustee ("*Trustee*").[3]

3. On August 5, 2021, the Court approved the employment of Baker & Associates, LLP as counsel for Debtor.[4]

4. On August 11, 2021, the Court issued its order for Debtor's initial status conference and ordered, inter alia, that a plan of reorganization be filed no later than September 30, 2021.[5]

5. On September 30, 2021, Debtor filed its "Debtor's Plan of Reorganization for Small Business Under Chapter 11" ("*First Plan of Reorganization*").[6]

6. On November 8 & 9, 2021, Texas Citizens Bank, N.A. ("*Texas Citizens Bank*"), Alief Independent School District, The City of Houston, and BankUnited, N.A. ("*BankUnited*"), filed objections to confirmation of the First Plan of Reorganization.[7]

7. On December 17, 2021, Debtor filed "Debtor's Second Amended Plan of Reorganization for Small Business Under Chapter 11" ("*Second Plan of Reorganization*").[8]

8. On December 22, 2021, Debtor filed a Motion to Approve Potential Loan from U.S. Small Business Administration ("*SBA Loan*").[9]

9. On December 23, 2021, BankUnited filed an objection to the SBA Loan and Debtor's Second Plan of Reorganization.[10]

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.

[2] ECF No. 1.

[3] ECF No. 6.

[4] ECF No. 52.

[5] ECF No. 56.

[6] ECF No. 81.

[7] ECF Nos. 88, 89, 90.

[8] ECF No. 124.

[9] ECF No. 127.

[10] ECF No. 129-130.

10. On December 27, 2021, Trustee and Texas Citizens Bank filed an objection to Debtor's Second Plan of Reorganization.[11]

11. On January 6, 2022, the Court held a hearing and denied the SBA Loan.[12]

12. On January 10, 2022, Debtor filed "Debtor's Third Amended Plan of Reorganization for Small Business Under Chapter 11" ("*Third Plan of Reorganization*").[13]

13. On January 19, 2022, Texas Citizens Bank filed an objection to confirmation of Debtor's Third Plan of Reorganization.[14]

14. On February 4, 2022, Debtor filed "Debtor's Fourth Amended Plan of Reorganization for Small Business Under Chapter 11" ("*Plan*").[15]

15. On March 1, 2022, BankUnited & Texas Citizens Bank filed objections to Debtor's Plan.[16]

16. On March 8, 2022, a hearing was held to consider confirmation of Debtor's Plan and all objections to the Plan.

17. On March 18, 2022, Debtor's Plan was confirmed pursuant to 11 U.S.C. § 1191(b).[17]

18. On June 16, 2022, Trustee filed a Notice of Plan Default (the "*June Default*").[18]

19. On June 29, 2022, Debtor made its June payment under the Plan.[19]

20. On July 16, 2022, Trustee filed a Second Notice of Plan Default (the "*July Default*" and together with the June Default, the "*Defaults*").[20]

21. On August 2, 2022, Debtor filed an "Emergency Motion to Modify Debtors Fourth Amended Plan of Reorganization for Small Business Under Chapter 11" (the "*Motion to Modify*"),[21] referring to a modified plan (the "*Modification*").

---

[11] ECF No. 131-32.
[12] January 6, 2022, Min. Entry. *See also* ECF No. 138.
[13] ECF No. 140.
[14] ECF No. 154.
[15] ECF No. 165.
[16] ECF No. 170, 172.
[17] ECF No. 183.
[18] ECF No. 203.
[19] ECF No. 215 at 1, ¶4.
[20] ECF No. 206.
[21] ECF No. 210.

22. On August 9, 2022, Trustee filed an objection to the Motion to Modify ("*Trustee's Objection*").[22]

23. On August 11, 2022, BankUnited filed an objection to the Motion to Modify ("*BankUnited's Objection*").[23]

24. On August 18, 2022, the Court held a hearing (the "*Hearing*") and now issues its instant Memorandum Opinion.

## II.   CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[24]  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[25]  This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O) this proceeding contains core matters, as it primarily involves proceedings concerning confirmation of a plan and the administration of this estate.[26]  This proceeding is also core under the general "catch-all" language because such a motion is the type of proceeding that can only arise in the context of a bankruptcy case.[27]

---

[22] ECF No. 215.

[23] ECF No. 216.

[24] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).

[25] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[26] *See* 11 U.S.C. § 157(b)(2)(A) & (O).

[27] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

This Court may only hear a case in which venue is proper.[28]  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Debtor has its principal place of business in Houston, Texas[29] and therefore, venue of this proceeding is proper.

## B.  Constitutional authority to enter a final order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[30]  The Motion to Modify pending before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O).  Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[31]  Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[32]  None of these parties have ever objected to this Court's constitutional authority to enter a final order or judgment.  These circumstances unquestionably constitute implied consent.  Thus, this Court wields the constitutional authority to enter a final order here.

---

[28] 28 U.S.C. § 1408.

[29] ECF No. 1.

[30] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[31] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).

[32] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

# III.   ANALYSIS

## A.  Debtor's Motion to Modify

On August 2, 2022, Debtor filed a motion to modify its confirmed plan of reorganization under § 1193(c) of the Bankruptcy Code.[33]  Debtor has provided its proposed modifications and the reasons why such modifications are necessary.[34]

### 1.  Modification terms

The Modification provides that "[t]he provisions of any previously approved plan remain effective unless inconsistent with this Modified Plan.  Any valuations contained in any previously approved plan remain binding unless inconsistent with this Modified Plan."[35]  Upon review, the Modification is nearly a carbon copy of the Plan.  The primary alteration is that the Modification proposes to defer Plan payments for the months of July, August, and September and resume payments on October 1, 2022.[36]  Debtor also proposes to cure the arrearages for the three missed payments under the Plan to BankUnited over forty-five months from the start date.[37]  Although the Modification fails to specifically address the Defaults pending against Debtor under the Plan, the Court's interpretation of the Modification as written, and as supported by testimony from Mr. Ahmed at the Hearing, is that it proposes to cure the Defaults so Debtor may start again anew.[38]

### 2.  Reasons for the Modification

Debtor seeks modification of its confirmed subchapter V plan because two of Debtor's air conditioning units stopped working in late June and needed to be replaced, which caused a decline

---

[33] ECF No. 210.
[34] *Id.*
[35] *Id.* at 2, ¶ 1.
[36] *Id.* at 4, ¶ 17.
[37] ECF No. 210-1 at 13.
[38] *See* ECF No. 210-1 at 26, ¶(d); August Min. Entry at 12:32 (Mr. Ahmed testified that the Modification seeks to reset the defaults).

in business and thus revenue.[39]   Debtor's Motion states that because much of the facility has be-

come extremely hot without those air conditioning units, many clients ceased coming to class and

stopped paying.[40]   Further, Debtor alleges that a major building repair, such as replacing two air

conditioning units, and a loss of revenue stemming from such needed repair qualifies as a circum-

stance that warrants modification.[41]   Debtor's representative, Mr. Ahmed, testified at the Hearing

that the main replacement unit was recently installed and that business has been and will continue

to improve in the future.[42]   Mr. Ahmed further testified that there was a smaller unit yet to be

installed in the lobby as of the Hearing date.[43]

The Court will now consider if Debtor has satisfied the requirements to modify a confirmed

subchapter V plan under § 1193(c).

## B.  Requirements to modify a confirmed subchapter V plan under § 1193(c)

Debtor filed its Motion to Modify pursuant to § 1193(c) of the Bankruptcy Code.[44]   Section

1193(c) provides that:

> If a plan has been confirmed under section 1191(b) of this title, the debtor may
> modify the plan at any time within 3 years, or such longer time not to exceed 5
> years, as fixed by the court, but may not modify the plan so that the plan as modified
> fails to meet the requirements of section 1191(b) of this title. The plan as modified
> under this subsection becomes the plan only if circumstances warrant such modifi-
> cation and the court, after notice and a hearing, confirms such plan, as modified,
> under section 1191(b) of this title.[45]

---

[39] ECF No. 210.
[40] *Id.* at 3.
[41] *Id.*
[42] August 18, 2022 Min. Entry.
[43] *Id.*
[44] ECF No. 210.
[45] 11 U.S.C. § 1193(c).

Section 1193(c) requires, among other things, that "circumstances warrant such modification."[46] Currently, case law within the Fifth Circuit or elsewhere discussing which circumstances warrant modification pursuant to § 1193(c) is non-existent. Nevertheless, discussions of modification under § 1127(b) can provide guidance as to the phrase "only if circumstances warrant such modification".[47] In discussing § 1127(b), Collier's provides that such circumstances warranting modification may include "unforeseen circumstances [that] render the confirmed plan unworkable…"[48] Courts have often employed this standard when reviewing modifications under § 1127(b).[49] In courts applying this standard, for circumstances to be unforeseen they cannot be the result of any unjustifiable or culpable acts or omissions from the debtor.[50] However, debtors who undertake, in good faith, reasonable business decisions that ultimately render the plan unworkable should not automatically be precluded from modification even if the results of their decisions were "foreseeable" as a possible outcome.[51] In other words, a debtor's good faith and business judgment are relevant when considering if circumstances are unforeseeable. For circumstances to render the

---

[46] 11 U.S.C. § 1193(c). The Court notes that unlike a modification under § 1193(b), there is no limitation that a modification take place prior to substantial consummation of the plan under § 1193(c).

[47] 11 U.S.C. § 1127(b).

[48] COLLIER ON BANKRUPTCY ¶ 1127.03[2][a] (Richard Levin & Henry J. Sommer eds., 16th ed.).

[49] *See In re Boylan Int'l, Ltd.*, 452 B.R. 43, 50 (Bankr. S.D.N.Y. 2011) (circumstances warranted modifying plan to extend life of liquidating trust when there were unforeseen delays in prosecuting litigation that was the largest asset of the trust); *In re Temple Zion*, 125 B.R. 910, 913 (Bankr.E.D.Pa.1991) (allowing modification to permit the debtor to modify its plan pursuant to section 1127(b) because unforeseen delays in obtaining zoning approval delayed the sale of the debtor's unimproved real estate); *In re Gene Dunavant & Son Dairy*, 75 B.R. 328 (M.D. Tenn. 1987) (concluding that circumstances had changed that rendered the original plan unworkable). *See also In re JCP Properties, Ltd.*, 540 B.R. 596, 612 (Bankr. S.D. Tex. 2015) (substantial unforeseen circumstances constituting an element of inquiry into filing serial chapter 11s to circumvent an inability to modify after substantial consummation).

[50] *See In re Gene Dunavant & Son Dairy*, 75 B.R. at 334 ("the debtor suffered a loss of revenues so serious as to render the original plan unworkable; he did not find that this was the result of any culpable act or omission on the part of SBC, the debtor or any other party. This finding, standing alone, would seem to justify a reworking of the plan…")

[51] *See id.* at 333–34 ("Land Bank, however, fails to show that under the circumstances SBC's decision was unreasonable, in bad faith, or in violation of SBC's contract with the debtor. We note that although failure to place additional cows in the herd was a poor business decision, SBC was probably justified in not doing so during the pendency of FmHA's appeal.").

confirmed plan unworkable, there must be a material change in circumstances that prevents the debtor from adhering to the terms of the original plan.[52]

It is a basic principle of statutory construction that similar language in similar statutes should be interpreted similarly.[53]  Section 1127(b) and § 1193(c) are quite similar, as both deal with post-confirmation modification, both require that the modification satisfy the general confirmation requirements in their respective sections, and each require that circumstances warrant modification.[54]  As such, insofar as determining when circumstances warrant modification under § 1193(c) the Court finds that one element of the inquiry is to determine if unforeseen circumstances rendered the plan unworkable.

Some courts have suggested that an inability to meet the financial performance required under the plan is not grounds for modification under § 1127(b).[55]  The court in *In re Dam Road Mini Storage* held, "[a] confirmed plan is a contract. The insolvency of the promisor does not discharge the duty to perform under the contract. No amount of financial constraint will, in and of itself, relieve the debtor of its obligations."[56]  The Court wholly rejects this argument.  The halls of bankruptcy are littered with broken promises and there is scant reason that a debtor would seek to modify under § 1127 or § 1193 except for, at least in part, an inability to pay.  As such, the Court does not adopt this requirement in considering when modification is warranted under § 1193(c).

---

[52] *See id.* at 334.
[53] *BNSF Ry. Co. v. United States*, 775 F.3d 743, 756 (5th Cir. 2015)
[54] *Compare* 11 U.S.C. § 1127(b), § 1193(c).
[55] *See In re Dam Road Mini Storage*, 156 B.R. 270, 271 (Bankr. S.D. Cal. 1993); *In re Modern Steel Treating Co.*, 130 B.R. 60, 65 (Bankr. N.D. Ill. 1991).
[56] *In re Dam Road Mini Storage*, 156 B.R. at 271.

Accordingly, the Court finds that to modify a confirmed plan of reorganization under § 1193(c), the plan, as modified, must (1) be warranted under the circumstances, and that in assessing whether modification is warranted under § 1193(c) the debtor must show that the circumstances which gave rise to the modification were the result of an unforeseen circumstance that rendered the confirmed plan to be unworkable.  Whether circumstances are unforeseen or render the plan unworkable are fact determinations to be made by this Court.  In analyzing whether circumstances were unforeseen, a debtor's good faith and business judgment are relevant to consider; and (2) satisfy the 1191(b) confirmation requirements,[57]

The Court will discuss each in turn in light of the objections to the Modification.

**1.   Whether Debtor's Modification is warranted under the circumstances**

BankUnited asserts in its Objection that  circumstances do not warrant modification because (a) Debtor knew or should have known that the HVAC units would fail given their age and that Debtor should have planned accordingly.  As discussed infra, the Court disagrees on this point.  Notwithstanding, the Court *sua sponte* finds that the Modification is not warranted under § 1193(c) because: (b) Debtor intentionally failed to timely remit the June 2022 Plan payment to the Trustee for disbursement, (c) Debtor inexplicably failed to escrow for the emergency fund contemplated by the Plan, and (d) Debtor has failed to show that the Defaults were the result of unforeseen circumstances.

The Court will address each in turn.

**a.   Whether Debtor knew or should have known that the HVAC units would fail**

---

[57] 11 U.S.C. §§ 1190, 1191(c)(3)(B)(ii), 1193(c)

BankUnited asserts in its Objection that circumstances do not warrant modification of the confirmed Plan under § 1193(c).[58]  Specifically, BankUnited contends that given the reported age of the air conditioning units—which Debtor stated were "original to the Property"—it's likely that Debtor knew or should have known there were or would be issues with the units and should have planned accordingly.[59]  On this point, the Court disagrees.  Simply because two of Debtor's air conditioners were "original to the Property" does not necessarily mean Debtor knew or should have known they were going to become inoperable in the near future.  Mr. Ahmed testified that the HVAC units were serviced last year and that he was told he might need to replace them "eventually" because the units were old.[60]  Debtor was not told when the units would need to be replaced.[61]  Prudent management might have taken note of this advice and escrowed funds accordingly to prepare for this eventuality.  However, absent any evidence that Debtor was aware the units were "on their last leg" so to speak, this Court does not find that Debtor, a sports complex and physical fitness facility, and not an HVAC facility, knew or should have known that the HVAC units would fail in the very near future.

Accordingly, BankUnited's objection that the Modification is not warranted under § 1193(c) is overruled.

### b.  Debtor's intentional failure to remit the June 2022 Plan payment

The first, most concerning reason, why the Modification is not warranted came out at the Hearing in the form of testimony from Mr. Ahmed.  When asked why he failed to make the June 2022 Plan payment, Mr. Ahmed stated:

---

[58] ECF No. 216.

[59] *Id.* at 6, ¶ 17.

[60] August 18, 2022, Min. Entry.

[61] *Id.*

So, in the midst of all that I've been approached by a group of investors and they had an interest to buy the property. Which I thought, you know, okay, that would help me, and you know. And they asked me, they said, and it was a mistake, I was misled, but they said just, you know, be late on the payment, don't make the payment, it will be less expensive to buy the property and you'll pay us less rent had the property went to foreclosure, and I was misled, I, you know and I believed it, and I realized it was a mistake and I should have not have done that, and moving forward, it was a bad mistake from my end.[62]

This intentional failure to make the June 2022 Plan payment resulted in the June Default that Debtor now seeks to cure through this Modification.[63] Clearly, an intentional failure to adhere to the terms of the Plan can only be attributed to Debtor's deliberate and conscious decision to disregard this Court's order directing Debtor to make all payments under the Plan, and not any unforeseen circumstance rendering the Plan unworkable. It is axiomatic to say that intentionally withholding Plan payments constitutes bad faith and poor business judgment.[64] Creditors are frequently required to accept payments that are delayed and for less than what is owed in bankruptcy, but Debtor has an unqualified obligation to make payments under the confirmed Plan. Debtor's failure to timely remit the June 2022 payment shows a complete lack of regard for orders from this Court or for the wellbeing of the creditor body. Debtor's credibility to adhere to the terms of the Plan, or any modification thereof, has been irreparably damaged in this case as a result.

### c. Debtor's unexplained failure to escrow for the emergency reserve fund

The second reason modification is not warranted is Debtor's unexplained failure to properly escrow for the emergency reserve fund (the "*Fund*") contemplated by the Plan.[65] Debtor's Plan provides that this Fund will be available to cover expenses associated with

---

[62] August 18, 2022, Min. Entry at 11:34-35.

[63] *See* ECF No. 203, 210-1 at 26, ¶(d); August 18, 2022 Min. Entry at 12:32.

[64] As discussed infra, Debtor's bad faith also renders the Modification unconfirmable under § 1129(a)(3). Under § 1129(a)(3), a plan must have "been proposed in good faith and not by any means forbidden by law."[64]

[65] ECF No. 165 at 15-16.

emergencies and to pay the Trustee's fees.[66]  The Plan contemplated that Debtor was to deposit its

net cashflow each month into the Fund.[67]  Mr. Ahmed testified at the Hearing that Debtor had not

been making payments into the Fund.[68]  When pressed on why payments were not made into the

Fund, Mr. Ahmed testified that he didn't know why the payments were not made, nor did he know

where the funds were expended.[69]  No other evidence or testimony was given to explain this failure

to adhere to the terms of the Plan.  Mr. Ahmed only provided vague assurances that the Fund would

be funded going forward.[70]  Debtor recently provided actual revenue streams for the months of

April, May, June, and July 2022 ("*Actual Revenue*").[71]  Debtor's net cash flow (profit after all

expenses, debt service, and escrows) totals $15,301 for the months of April, May, and June 2022.[72]

Furthermore, Debtor reports a net cash flow of $10,262 for the month of July 2022 since no debt

service payments or escrows were paid for that month.[73]  Debtor's total monthly debt service and

escrow obligations are $23,344.[74]

Debt payments are due under the Plan on the first  of each month,[75] so by implication the

prior months revenue must be used to make these payments.  Debtor's Actual Revenue suggests

that, (i) Debtor was capable of making the July payment in full because the June revenue exceeded

expectations,[76] and (ii) had Debtor properly escrowed for the Fund, the August payment could

have been made in full with money to spare to partially pay for the HVAC units ($25,563 in net

---

[66] ECF No. 165 at 15-16.
[67] ECF No. 165-1.
[68] August 18, 2022, Min. Entry at 12:25.
[69] *Id.*
[70] *Id.*
[71] ECF No. 222.
[72] *See id.*
[73] *Id.*
[74] *Id.*
[75] ECF No. 165 at 26, ¶(d).
[76] *See* ECF No. 222 (showing that actual revenue for June 2022 was $4,466 higher than projected).

cash flows - $23,344 in debt obligations).[77]   The obligation to make payments into the Fund was specifically enumerated as an obligation in the Plan, so at best this failure to escrow constitutes gross negligence from Debtor.[78]   At worst, it could be construed as intentional and in bad faith. Either way, the failure to escrow was not the result of an unforeseeable circumstance, it was the result of either bad faith or poor business judgment.  Debtor's Actual Revenue suggests that Debtor was capable of making payments in July and August.

Furthermore, Debtor's failure to account for where the revenue went that should have been deposited into the Fund raises concerns as to Debtor's compliance with § 1191(c)(2)(A).[79]   As discussed, plans confirmed under § 1191(b) require that the plan be "fair and equitable."[80]   For a plan to be fair and equitable as defined in § 1191(c) it must, among other things, provide that "that all of the projected disposable income of the debtor to be received in the 3-year period…will be applied to make payments under the plan."[81]   Section 1191(d)(2) defines disposable income as "income that is received by the debtor and that is not reasonably necessary to be expended… for… the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor."[82]

Debtor's net cash flow is comprised of revenue left over after all expenses and debt service payments are made.[83]   In other words, Debtor's profit.  As stated previously, the Plan implicitly provides that the net cash flows will be deposited into the Fund each month.[84]   If Debtor had done

---

[77] *See* ECF No. 222.
[78] ECF No. 165 at 15-16
[79] 11 U.S.C. § 1191(c)(2)(A).
[80] 11 U.S.C. § 1191(b).
[81] *Id.*
[82] 11 U.S.C. § 1191(d)(2).
[83] ECF No. 165-1.
[84] *Id.*

this, it would be allowed for payment of expenses "necessary for the continuation, preservation, or operation of the business" under § 1191(d)(2)[85] which includes such expenditures as the replacement of the HVAC units and to make payments under the Plan when revenues fall short. However, because Debtor did not escrow its profits into the Fund and provided no explanation as to where this revenue went, Debtor has filed to comply with § 1191(c)(2)(A). Mr. Ahmed testified at the Hearing that Debtor currently has around $12,000 in the bank.[86] Debtor's net cashflows for April-July are $25,563.[87] This also does not take into account Debtor's August net cashflow, which was not provided. This leaves an unexplained $13,563 in missing net cashflow for April-July of 2022.

### d. Plan Defaults

The third reason that modification is not warranted is that, thus far, two notices of default have been entered against Debtor on June 16, 2022, and July 16, 2022, by the Trustee for failure to make payments under the Plan.[88] The Plan provides that:

> The Debtor shall make monthly payments to the Trustee beginning the first day of the calendar month following the Effective Date and each month thereafter on the 1st of the month… If the Debtor fails to make a payment to the Trustee within 15 days, the Trustee may file a Notice of Default. After the second Notice of Default in any calendar year, the Trustee may file a Motion to Dismiss or Convert the Bankruptcy Case.[89]

Debtor, through the Modification, seeks to retroactively cure the Defaults and pause Plan payments for the months of July-September.[90] The Plan proposes to resume payments beginning

---

[85] 11 U.S.C. § 1191(d)(2).
[86] August 18, 2022, Min. Entry at 12:23.
[87] ECF No. 222.
[88] ECF No. 203, 206.
[89] ECF No. 165 at 26, ¶(d).
[90] ECF No. 210-1 at 26, ¶(d), August 18, 2022 Min. Entry at 12:32.

October 1, 2022.[91]  Debtor's Modification proposes to make up the arrearages owed to BankUnited over the course of 45 months.[92]  As discussed, Debtor's June Default was of Debtor's own doing, it was done in bad faith, and cannot be cured under any circumstance.  Debtor has also failed to carry its burden to demonstrate that a modification is warranted to cure the July 2022 Default.  Debtor's Motion to Modify states that the HVAC failure occurred in late June of 2022, resulting in a loss of customers and hence a loss of revenue.[93]  Debtor asserts that "Samurai has not had the ability to make payments under its confirmed plan… Samurai was in a good position to make its payments but for the loss of the HVAC."[94]

As discussed, payments under the Plan are due on the first, and by logical implication, are paid with proceeds from the prior month.[95]  Debtor not only failed to demonstrate that the June 2022 revenue was impacted so severely that payment could not be made on July 1, 2022, but Debtor's Actual Revenue suggests that it was capable of making this payment.[96]  Furthermore, notwithstanding that Debtor was facing a second default when it failed to make the July 2022 payment, Debtor failed to take any action or seek relief in this Court until August 2, 2022, more than two weeks after the second notice of default was entered against Debtor.[97]  Debtor has failed to demonstrate that the failure to make the July 2022 payment was the result of unforeseen circumstances rendering the Plan unworkable.

Accordingly, the Court finds that pursuant to § 1193(c), Debtor has failed to establish that the circumstances described in the Motion to Modify warrant modification of the confirmed plan.

---

[91] ECF No. 210 at 4, ¶ 17.
[92] ECF No. 210-1 at 13.
[93] ECF No. 210 at 3, ¶ 7-8.
[94] *Id.* at 3, ¶ 8.
[95] ECF No. 165 at 26, ¶(d).
[96] ECF No. 222.
[97] ECF No. 210.

Notwithstanding that the Court has found that Debtor has failed to demonstrate that circumstances warrant plan modification, the Court will nonetheless consider if the confirmation requirements in § 1191(b) have been satisfied.

## 2. Whether the Modification satisfies the confirmation requirements in § 1191(b)

As discussed previously, plan modification under § 1193(c) also requires that the confirmation requirements of § 1191(b) continue to be satisfied.  For a plan to be confirmable under § 1191(b), a debtor must meet the confirmation requirements of § 1129(a), other than paragraphs (8), (10), and (15).[98]  Additionally, confirmation under § 1191(b) requires that the plan/modification "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."  The Court will consider each in turn.

### a. The Modification does not satisfy § 1129(a)(1)

The first requirement of § 1129(a) is that the plan must comply with "the applicable provisions of this title."[99]  The legislative history reflects that "the applicable provisions of chapter 11 include such sections as 1122 and 1123, governing classification and contents of a plan."[100]  Debtors' Plan sets forth the following claims and interests:[101]

> Class 1 - consists of the claim of Harris County et al for ad valorem property taxes to the extent allowed as a secured claim under § 506 of the Code.  The claim of Harris County et al is secured by the Property and by vehicles and other business personal property located at 12500 Oxford Park Drive, Houston, Texas 77082.
>
> Class 2 - consists of the claim of the City of Houston et al for ad valorem property taxes to the extent allowed as a secured claim under § 506 of the Code.  The claim

---

[98] 11 U.S.C. § 1191(b).
[99] 11 U.S.C. § 1129(a)(1).
[100] H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5963, 6368, 5787, 5912.
[101] ECF No. 210-1 at 4-6.

of the City of Houston et al is secured by the Property and by vehicles and other business personal property located at 12500 Oxford Park Drive, Houston, Texas 77082.

Class 3 - consists of the claim of Alief Independent School District for ad valorem property taxes to the extent allowed as a secured claim under § 506 of the Code. The claim of Alief Independent School District is secured by the Property.

Class 4 - consists of the claim of the Texas Workforce Commission to the extent allowed as a secured claim under § 506 of the Code. The claim of the Texas Workforce Commission is secured by all real and personal property of the Debtor.

Class 5 - consists of the claim of LiftFund to the extent allowed as a secured claim under§ 506 of the Code. The claim of LiftFund is secured by two 2012 Chevrolet G3500 Express Vans owned by the Debtor.

Class 6 - consists of the claim of BankUnited to the extent allowed as a secured claim under § 506 of the Code. The claim of BankUnited is secured by real property at 12500 Oxford Park Drive, Houston, Texas 77082 owned by the Debtor. Class 6 shall include the total amount owed to BankUnited. The Class 6 claim is evidenced by U.S. Small Business Administration Note (the "Note") dated May 12, 2017, loan number 9777685005 (the "Loan"). The Note is secured by a Deed of Trust dated of even date with Mike Ramsey as the trustee covering the Property.

Class 7 - consists of the claim of Texas Citizens Bank to the extent allowed as a secured claim under § 506 of the Code. The claim of Texas Citizens Bank is secured by improvements and real property at 12500 Oxford Park Drive, Houston, Texas 77082 owned by the Debtor. The claim of Texas Citizens Bank is classified for purposes of this plan as an unsecured claim and shall be paid in Class 9. The prior secured claims are greater in amounts than the value of the collateral.

Class 7A - consists of the claim of the U.S. Small Business Administration. The claim of U.S. Small Business Administration is allegedly secured by improvements and real property at 12500 Oxford Park Drive, Houston, Texas 77082 owned by the Debtor and other assets of the Debtor. The Debtor cannot locate a UCC-1 filed by the U.S. Small Business Administration with the State of Texas. Due to the failure to perfect the security interests, the claim of the U.S. Small Business Administration is classified for purposes of this plan as an unsecured claim and shall be paid in Class 9. Further, even if a UCC-1 had been filed, the prior secured claims are greater in amounts than the value of the collateral and the claim would still be an unsecured claim and treated in Class 9.

Class 7B - consists of the claim of the Atlas Acquisitions. Atlas Acquisitions is an assignee of a claim from Everest Business Funding that filed a UCC-1 financing statement on or about March 27, 2019 as to the Debtor and Ihad Belim Ahmed, (file

number 19-001981948 filed by Corporate Service Company). The claim of Atlas Acquisitions is secured by property of the Debtor. The prior secured claims are greater in amounts than the value of the collateral. The claim of Atlas Acquisitions is classified for purposes of this plan as an unsecured claim and shall be paid in Class 9.

Class 8 - consists of the allowed priority claim of the Internal Revenue Service.

Class 9 - consists of all non-priority unsecured claims allowed under § 502 of the Code including the claim of the U.S. Trustee.

Class 10 - consists of the claims of the equity security holders.

Upon review, the Modification properly classifies claims and interests in accordance with §§ 1122 and 1123(a)(1).[102]  The claims and interests placed in each class are substantially similar to other claims and interests in each such class.  Valid business, factual, and legal reasons exist for separately classifying the various classes of claims and interests created under the Modification, and such classes, and the Modification's treatment thereof, do not unfairly discriminate between holders of claims or interests in each class.  The Modification also provides for the same treatment by Debtor of each claim or interest in each respective class, thereby satisfying § 1123(a)(4).[103]  However, for reasons discussed infra, Debtor failed to satisfy the plan requirements for subchapter V in § 1190(1)(B) and (C).

Accordingly, Debtor's Modification does not satisfy § 1129(a)(1).

**b.   The Modification fails to satisfy § 1129(a)(2)**

Section 1129(a)(2) requires that "[t]he proponent of the plan comply with the applicable provisions of this title."[104]  Among those provisions are the compliance with the disclosure and

---

[102] 11 U.S.C. §§ 1122 and 1123(a)(1).

[103] See, e.g., In re U.S. Brass Corp., 169 F.3d 957, 958 (5th Cir.1999) ("11 U.S.C. § 1123(a)(4) ... requires all creditors within a class be treated the same, unless the creditor who is being treated less favorably agrees to less favorable treatment.").

[104] 11 U.S.C. § 1129(a)(2).

solicitation requirements, which is the paradigmatic example of what Congress had in mind when it enacted § 1129(a)(2).[105]  Nevertheless, in a subchapter V case, a separate disclosure and solicitation of votes is not required, nor did this Court order that Debtors file a separate disclosure statement.[106]  All that is required in a subchapter V plan is that contain all of the plan requirements listed in §§ 1190(1)(A)-(C), 1190(2) and that Debtor solicit ballots for the plan/modification.  Additionally, in a nonconsensual subchapter V plan, such as the case here, § 1191(c)(3)(B)(ii) requires the plan to include appropriate remedies that may include liquidation of nonexempt assets to protect the holders of claims or interests in the event plan payments are not made.[107]  Apart from the mandatory provisions, a subchapter V debtor's plan may contain any additional provisions that are consistent with the Bankruptcy Code but which are not applicable in the instant case.[108]

The Court will consider if Debtor has met each of these requirements in turn.

### i.  Debtor's Modification satisfies § 1190(1)(A)

Section 1190(1)(A) requires that a debtor include in its plan "a brief history of the business operations of the debtor."[109]  Here, Debtor included the following business history in their Modification filed on August 2, 2022:  Debtor is a closely held Texas corporation established in 2006 and is wholly owned 50% each by Ihab Ahmed and Wafa Abuleel.[110]  Mr. Ahmed acts as president

---

[105] *See In re Trans World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995) ("The principal purpose of section 1129(a)(2) of the Bankruptcy Code is to assure that the plan proponents have complied with the disclosure requirements of section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the plan."); *In re Texaco Inc.*, 84 B.R. 893, 906–07 (Bankr. S.D. N.Y. 1988) (same).

[106] 11 U.S.C. § 1187(c)

[107] 11 U.S.C. § 1191(c)(3)(B)(ii).

[108] *See e.g.*, 11 USC § 1190(3) (a new provision promulgated by the statute which provides for modification of the rights of a holder of a claim secured only by a security interest in real property that is the principal residence of the debtor if the new value received in connection with the granting of the security interest was not used primarily to acquire the real property, but was used primarily in connection with the small business of the debtor).

[109] 11 U.S.C. § 1190(1)(A)

[110] ECF No. 210-1 at 1.

of Debtor.[111]   Debtor operates a sports complex and physical fitness facility in Houston, Texas that provides martial arts training, hosts summer camps, after school programs, and fitness activities for both children and adults.[112]   Debtor's operations were closed on multiple occasions as a result of disruptions from Hurricane Harvey and the Covid-19 pandemic.[113]

Accordingly, the Court finds that Debtors' Modification provides an adequate history of Debtor's business operations and therefore satisfies § 1190(1)(A).

### ii.   Debtor's Modification fails to satisfy § 1190(1)(B)

Section 1190(1)(B) requires that a debtor include a liquidation analysis in its plan of reorganization.[114]   Here, Debtor did include a copy of its prior liquidation analysis in its exhibit list but failed to offer and admit this liquidation analysis into evidence at the Hearing.[115]   Even if this exhibit was offered and admitted into evidence, it is deficient as it is merely the same liquidation analysis attached as an exhibit to the Plan that was filed February 4, 2022.[116]   Although it is conceivable that the liquidated value of Debtor's estate has not changed substantially in the six and a half months since the prior liquidation analysis was conducted, the Court cannot make assumptions nor rely on unreviewed and outdated figures to satisfy § 1190(1)(B).   The Debtor's primary asset is the real property secured by BankUnited's lien.[117]   Given the recent HVAC replacements and the ever-changing nature of real property values, the value of Debtor's assets warrants further review.

---

[111] ECF No. 210-1 at 1.
[112] *Id.*
[113] *Id.*
[114] 11 U.S.C. § 1190(1)(B).
[115] *Compare* ECF No. 221, Exhibit 8-9 to August 18, 2022 Min. Entry.
[116] ECF No. 165-2.
[117] *Id.*

Accordingly, the Court finds that Debtor's Modification does not provide an adequate liquidation analysis as required by § 1190(1)(B).[118]

### iii. Debtor's Modification fails to satisfy § 1190(1)(C)

Section 1190(1)(C) requires that a debtor's plan contain "projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization."[119]  This plan requirement allows the Court to assess payment feasibility.  Debtor submitted as an exhibit its modified projections of future revenue ("*Modified Projections*").[120]  The Modified Projections estimate that Debtor's revenue for the months of July and August of 2022 will fall from $49,263 to $22,830.[121]  Debtor anticipates that starting in September 2022, revenue will return to pre-disruption levels of around $50,000 per month ($49,010 estimated for September 2022).[122]  Debtor's actual revenue for July was $36,045, better than expected for this month.[123]

The first problem with the Modified Projections is that Debtor fails to explain why projections were given for the months of April-July 2022 when actual revenue streams were known for these months.  While revenue projections are sufficient to satisfy Debtor's burden for future months, an actual accounting is necessary for months that have already passed.  Debtor provided actual revenue streams for these months at the Hearing as a separate exhibit,[124] but this is insufficient to carry Debtor's burden to provide this information in the projections of future revenue itself.

---

[118] The Court is also unable to assess if the best interests test is satisfied under § 1129(a)(7) without an updated liquidation analysis from Debtor.
[119] 11 U.S.C. § 1190(1)(C).
[120] ECF No. 221-3.
[121] Compare ECF Nos. 165-2 to 221-3.
[122] ECF No. 221-3.
[123] ECF No. 222.
[124] *Id.*

The second problem is that Debtor failed to include several line-item expenditures necessary to assess payment feasibility. At the Hearing, Mr. Ahmed testified that he used his wife's credit card to purchase Debtor's replacement HVAC units in the amount of §9,193,[125] but that he did not know how Debtor was going to repay this obligation or on what terms.[126] This debt obligation does not appear in the Modified Projections as an expense. Debtor must include this expense to assess feasibility. Mr. Ahmed also testified that under the Houston Independent School District ("*HISD*") contract, Debtor is obligated to provide a scholarship to one child per semester per school that Debtor does business with.[127] This scholarship would allow the recipient to attend Debtor's after school program free of charge.[128] Testimony at the hearing suggests that the scholarship recipient will be selected from those already enrolled in the after school program.[129] As such, each scholarship will result in a loss of revenue and should be listed as an expense. Debtor also inexplicably failed to list the Trustee's ongoing fees as an expense after the month of July 2022 in the Modified Projections.[130] As a nonconsensual plan, the Trustee will continue to be involved and incur fees during the life of the Plan/Modification and her fees must be included.

Accordingly, the Court finds that Debtor's Modified Projections are insufficient to satisfy § 1190(1)(C).

### iv. Debtor's Modification satisfies § 1190(2)

Section 1190(2) requires the plan to provide for the submission of "all or such portion of the future earnings or other future income of the debtor to the supervision and control of the trustee

---

[125] August 18, 2022, Min. Entry; ECF No. 222-2.
[126] August 18, 2022, Min. Entry.
[127] *Id.*
[128] *Id.*
[129] *Id.* at 12:22-23.
[130] *See* ECF 210-2.

as is necessary for the execution of the plan."[131]   In an individual case, this provision replaces the
similar rule in § 1123(a)(8).   In non-individual cases, as in the case sub judice, it imposes a new
requirement.   Because a plan ordinarily must provide for payment of creditors from the debtor's
income, the requirement for the submission to the trustee of income as necessary for the execution
of the plan constitutes a feasibility prerequisite.   Moreover, § 1183(c)(1) provides for termination
of the trustee's service upon substantial consummation of a consensual plan under § 1191(a).   Un-
der § 1101(2), "substantial consummation" occurs upon, inter alia, "commencement of distribution
under the plan."

Conversely, in a non-consensual plan such as the one before the Court, § 1194(b) provides
for the subchapter V trustee to make payments to creditors under the plan, after confirmation,
unless the plan or the order confirming it provides otherwise.[132]   Because the subchapter V trustee
must make payments under a non-consensual plan, the trustee's service does not terminate upon
its substantial consummation but continues, at a minimum, until the trustee has made the required
disbursements.   Here, Debtor's Modification provides for the Trustee to act as the plan dispersing
agent.[133]   It further provides for Debtor to remit monthly all disposable income generated by Debtor
to the Trustee for distribution to creditors in accordance with the Modification.[134]

Accordingly, the Court finds that Debtor's Modification satisfies § 1190(2).

### v.  Debtor failed to solicit ballots for the Modification

Notwithstanding the importance of creditor voting in the confirmation process, there is no
confirmation requirement in § 1129(a) that specifically requires a debtor to solicit ballots.   In a

---

[131] 11 U.S.C. § 1190(2)
[132] 11 U.S.C. § 1194(b).
[133] ECF No. 210-1 at 22-23.
[134] ECF No. 210-1 at 22-23.

traditional chapter 11, §§ 1129(a)(8), and (10) implicitly impose a voting requirement as either all impaired classes must approve the plan to confirm a consensual plan, or at least one impaired creditor must approve to confirm a nonconsensual plan.[135]  Sections 1129(a)(8) and (10) are two of three subsections of § 1129(a) that do not have to be satisfied for a subchapter V plan to be confirmed as a nonconsensual plan under § 1191(b).  Because sections (8) and (10) are not applicable to subchapter V, it might lead one to ask whether balloting is actually required in a cramdown under subchapter V since no creditor approval is necessary to confirm a nonconsensual plan.  It is. Unless debtors make a good faith effort to ballot, the Court is not in a position of being unable to ascertain if the plan is to be confirmed under § 1191(a) or (b).

Balloting on the plan is obviously necessary if the debtor wants to achieve consensual confirmation under § 1191(a) because all classes of impaired creditors must accept the plan to meet the confirmation requirement in § 1129(a)(8).  Even if the plan will ultimately be nonconsensual and require no creditor approval, Debtors have an obligation to solicit ballots in subchapter V so the Court is able to determine that it is in fact a nonconsensual plan to be confirmed under § 1191(b).  This Court has previously held that:

> [f]ailure to cast a written vote constitutes neither acceptance nor rejection of the plan. Based on the plain language of § 1126(c), the 2/3 and 1/2 numerosity requirements are counted based on creditors that have accepted or rejected such plan. If a creditor has not voted in adherence with Rule 3018(c), then they have not accepted or rejected the plan. Those nonvotes do not satisfy the language of § 1126(c) and thus, do not count toward the numerosity requirements. [136]

---

[135] *See* 11 U.S.C. §§ 1129(a)(8), (10).

[136] *In re Bressler*, No. 20-31024, 2021 WL 126184, at *3 (Bankr. S.D. Tex. Jan. 13, 2021) (internal quotations removed).

As an evidentiary matter, the Court must know how each class under the plan has voted so it can be determined if the plan is to be confirmed under § 1191(a) or (b).[137]  A debtor's failure to make a good faith effort to solicit ballots is thus an additional ground for denying confirmation. However, cramdown confirmation of a plan with balloting that draws no objections or that is modified to resolve them by agreement creating what is essentially a consensual cramdown plan – is perfectly acceptable in a subchapter V confirmation proceeding.

Here, Debtor failed to solicit ballots.  Subchapter V offers debtors significant flexibility by eliminating the requirement that at least one creditor approve a plan.  However, this flexibility is not without limits and Debtor must still solicit ballots even if it's anticipated that all creditors will vote for or against the plan/modification.

Accordingly, Debtor's Modification also failed to satisfy  the balloting requirement for plan confirmation.

### vi.  Debtor's Modification fails to satisfy § 1191(c)(3)(B)(ii)

Section 1191(c)(3)(B)(ii) requires that "the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made."[138]  Because the provisions of a confirmed plan are binding on the debtor and creditors under § 1141(a), the plan's provisions for default and remedies control. In a consensual plan, the provisions governing default and remedies ordinarily have their source in negotiations with the various creditors that lead to terms that result in acceptance of the plan. When one or more classes of impaired creditors do not accept the plan, such as the case here, the

---

[137] *See also* 31 No. 3 J. Bankr. L. & Prac. NL Art. 1 ("Because the plan must include information that would normally be found in the disclosure statement, some courts have required solicitation even if class consent is otherwise unnecessary for confirmation.").
[138] 11 U.S.C. § 1191(c)(3)(B)(ii).

requirements for nonconsensual plan confirmation in § 1191(c) provide the source of remedies for default which may include liquidation of nonexempt assets to protect the holders of claims or interests in the event plan payments are not made.[139] Here, Debtor's Modification provides:

> If the reorganized Debtor defaults under the Plan as to a creditor, then such creditor may send a written notice of the default… to the reorganized Debtor and counsel for the Debtor by regular mail and by certified mail... If the reorganized Debtor does not cure the default within 30 days after receiving the written Default Notice, such creditor with a default may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.[140]
> …
> If the Debtor fails to make a payment to the Trustee within 15 days, the Trustee may file a Notice of Default. After the second Notice of Default in any calendar year, the Trustee may file a Motion to Dismiss or Convert the Bankruptcy Case.[141]

The Court considers this remedy to be marginally sufficient to protect the holders and interests of creditors in the event plan payments are not made.

Accordingly, the Court finds that the Modification satisfies § 1191(c)(3)(B)(ii).

In conclusion, because Debtor failed to provide an updated liquidation analysis, adequate projections of future revenue, and failed to solicit ballots, the Modification fails to satisfy § 1129(a)(2).

### c.  The Modification fails to satisfy § 1129(a)(3)

Under § 1129(a)(3), a plan must have "been proposed in good faith and not by any means forbidden by law."[142]  As an initial matter, the Court concludes that the Plan has not been proposed by any means forbidden by law.[143]  No party-in-interest has suggested otherwise, and leaving that aspect of § 1129(a)(3) aside, the Court focuses on the requirement of good faith.  The Bankruptcy

---

[139] 11 U.S.C. § 1191(c)
[140] ECF No. 210-1 at 15.
[141] *Id.* at 26, ¶(d).
[142] 11 U.S.C. § 1129(a)(3)
[143] ECF No. 210

Code does not define the term "good faith," but the Fifth Circuit has stated that the requirement of good faith must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan, keeping in mind that the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start.[144]  "Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of § 1129(a)(3) is satisfied."[145]  A debtor's plan may satisfy the good faith requirement even though the plan may not be one which the creditors would themselves design and indeed may not be confirmable.[146]  The standard of proof required by the debtor to prove that a Chapter 11 plan was proposed in good faith is by a preponderance of the evidence.[147]

As discussed at length supra, Debtor has failed to show that the Modification was proposed in good faith in light of Debtor's intentional failure to timely remit the June 2022 Plan payment.

Accordingly, the Modification fails to comply with § 1129(a)(3).

### d.   The Modification satisfies § 1129(a)(4)

Section 1129(a)(4) provides that "any payment" made or to be made by the plan proponent or the debtor for services "in or in connection with" the plan or the case must be approved by or "subject to the approval of" the bankruptcy court as "reasonable."[148]  Pre-confirmation payments for fees and expenses incurred in a bankruptcy case have been held to be within the scope of § 1129(a)(4).[149]  The requirements under § 1129(a)(4) are two-fold.  First, there must be disclosure. Second, the court must approve the reasonableness of payments.[150]  Section 1129(a)(4) is designed

---

[144] *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir.1985).
[145] *Id.*
[146] *In re Briscoe Enter., Ltd., II*, 994 F.2d 1160, 1167 (5th Cir.1993).
[147] *Id.* at 1165.
[148] 11 U.S.C. § 1129(a)(4).
[149] *In re Cajun Elec. Power Co.,* 150 F.3d 503, 513–14 (5th Cir.1998).
[150] 7 Collier on Bankruptcy ¶ 1129.03[4] (16th ed. 2015).

to ensure compliance with the Code policy that the bankruptcy court police the awarding of fees in title 11 cases, so that holders of claims and interests derive the benefit of such information as it might affect their decision to accept or reject the plan.   Here, no party-in-interest has filed an objection to the Modification regarding this provision. Additionally, the Court has reviewed the Plan Modification and finds that it complies with the requirements of § 1129(a)(4).[151]

Accordingly, the Modification satisfies § 1129(a)(4).

### e.   The Modification satisfies § 1129(a)(5)

Section 1129(a)(5) imposes as a requirement for confirmation that the plan proponent disclose any individual proposed to serve, after confirmation, "as a director, officer, or voting trustee of the debtor," and that the holding of such office by each individual "is consistent with the interests of creditors and equity security holders and with public policy."[152] Here, the Court notes that no party-in-interest has filed an objection to the Plan regarding this provision. Nevertheless, § 1129(a) obligates this Court to make a finding under § 1129(a)(5), whether or not any party has objected to the plan on § 1129(a)(5) grounds.[153]   Here, Debtor's Modification proposes to retain Mr. Ahmed as president of Debtor.[154]   Thus, if Debtor's Modification is confirmed, Mr. Ahmed once again will be in full control of Debtor, due to his current ownership and control of Debtor. Considering Mr. Ahmed's expertise in managing Debtor, this Court views that result as acceptable and in compliance with § 1129(a)(5).

Accordingly, the Modification satisfies § 1129(a)(5).

### f.   The Modification satisfies § 1129(a)(6)

---

[151] ECF No. 210.
[152] 11 U.S.C. § 1129(a)(5)(A).
[153] *See* 11 U.S.C. § 1129(a) (court "shall confirm a plan only if all of the following requirements are met")
[154] ECF No. 210 at 28.

Section 1129(a)(6) requires that "any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval."[155]  Such provision is not applicable to Debtors.[156]

Accordingly, Debtor's Modification satisfies § 1129(a)(6).

### g.  The Modification fails to satisfy § 1129(a)(7)

Section 1129(a)(7) provides:

> (a) The court shall confirm a plan only if all of the following requirements are met:
> ...
>     (7) With respect to each impaired class of claims or interests—
>     (A) each holder of a claim or interest of such class—
>     (i) has accepted the plan; or
>     (ii) will receive or retain under the plan on account of such claim or interest
> property of a value, as of the effective date of the plan, that is not less than the
> amount that such holder would so receive or retain if the debtor were liquidated
> under Chapter 7 of this title on such date ....

Section 1129(a)(7) requires a plan of reorganization meet the "best interests" test, which requires that each dissenting creditor receive at least as much as they would in a hypothetical Chapter 7 liquidation of the debtor.[157]  Here, no party-in-interest objected to Plan confirmation on this ground.  Substantially all of the Debtor's non-exempt assets are fully encumbered by the liens held by BankUnited and other smaller secured creditors.  Were the estate to be liquidated, it is doubtful there would be any unencumbered proceeds for the benefit of unsecured creditors.  However, as discussed supra, Debtor failed to provide an updated liquidation analysis for the Modification.  As such, the Court is unable to assess if the best interests test is satisfied.

---

[155] 11 U.S.C. § 1129(a)(6).
[156] ECF No. 210, 223.
[157] 11 U.S.C. § 1129(a)(7)(A).

Accordingly, Debtor's Modification fails to satisfy § 1129(a)(7).

### h.  The Modification need not satisfy § 1129(a)(8)

Section 1129(a)(8) provides that "[w]ith respect to each class of claims or interests (A) such class has accepted the plan; or (B) such class is not impaired under the plan."[158] Section 1129(a)(8) is satisfied only if each class under a proposed plan has either accepted the plan or is not impaired under the plan. Section 1129(a)(8) is one of three subsections of § 1129(a) that does not have to be satisfied for a subchapter V plan to be confirmed.[159] A plan that does not satisfy § 1129(a)(8) nonetheless can be confirmed if the plan satisfies the cram down requirements contained in § 1191(b). Section 1191(b) permits a plan proponent to "cramdown" a plan over a dissenting class if the plan does not "discriminate unfairly" and provides "fair and equitable" treatment to the dissenting classes that are impaired under the plan. Before a plan proponent may cramdown a plan, it must establish that all of the other requirements of § 1129(a) are met.

Accordingly, the Court will address the remaining requirements of § 1129(a) before discussing the cramdown requirements of § 1191(b).

### i.  The Modification satisfies § 1129(a)(9)

As discussed supra, classification of claims is covered in § 1122, which provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class."[160]  A debtor possesses considerable, but not complete, discretion to classify claims and interests in its Chapter 11 plan of reorganization. While considerable, that discretion is tempered at least with respect to unsecured priority tax

---

[158] 11 U.S.C. § 1129(a)(8).
[159] 11 U.S.C. § 1191(b).
[160] 11 U.S.C. § 1122(a).

claims.  Section 1123(a)(1) provides that a plan shall "designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(2), 507(a)(3), or 507(a)(8) of this title, and classes of interests."[161]  Here, no objection to confirmation on this ground was asserted by any party-in-interest.  Only Class 8 is a priority tax claim subject to the claim classification requirements in § 1129(a)(9)(C). Section 1129(a)(9)(C) provides:

> (C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash--
>> (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;
>> (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and
>> (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b))

 Here, Debtor's plan proposes that each priority tax claim will be paid the full amount of its claim in fifty-seven equal monthly payments (sixty – the three missed payments) beginning on the fifth day of the first full calendar month following the effective date of the Modification, and the claim will be paid no later than July 2, 2026.[162]  Each priority tax claim will receive not less than the most favored nonpriority unsecured claim provided for in the plan.[163]

Accordingly, the Modification satisfies § 1129(a)(9).

### j.   The Modification need not satisfy § 1129(a)(10)

Under § 1129(a)(10), "[i]f a class of claims is impaired under the plan," then it must be the case that "at least one class of claims that is impaired under the plan has accepted the plan,

---

[161] 11 U.S.C. §1123(a)(1)
[162] ECF No. 210 at 7, 14.
[163] ECF No. 223 at 2, ¶ 12.

determined without including any acceptance of the plan by any insider."[164]  As one court stated,

"[s]ection 1129(a)(10) operates as a statutory gatekeeper barring access to cramdown where there

is absent even one impaired class accepting the plan.  Cramdown is a powerful remedy available

to plan proponents under which dissenting classes are compelled to rely on difficult judicial valu-

ations, judgments, and determinations.  The policy underlying Section 1129(a)(10) is that before

embarking upon the tortuous path of cramdown and compelling the target of cramdown to shoulder

the risks of error necessarily associated with a forced confirmation, there must be some other

properly classified group that is also hurt and nonetheless favors the plan."[165]

As outlined above, § 1129(a)(10) does not have to be satisfied for a subchapter V plan to

be confirmed.[166]

### k.  The Modification fails to satisfy § 1129(a)(11)

Section 1129(a)(11) is commonly referred to as the "feasibility" requirement of confirma-

tion.  A debtor's plan is feasible if "[c]onfirmation of the plan is not likely to be followed by the

liquidation, or the need for further financial reorganization, of the debtor ... unless such liquidation

or reorganization is proposed in the plan."[167]  Under the feasibility standard, a debtor must demon-

strate that its plan offers a reasonable possibility of success by a preponderance of the evidence.[168]

The court need not require a guarantee of success.[169]  Essentially, a debtor must be able to show

that it can accomplish what it proposes to do, in the time period allowed, and on the terms set forth

in the plan.  The bankruptcy court must make a specific finding as to feasibility after engaging in

---

[164] 11 U.S.C. § 1129(a)(10).

[165] *In re One Times Square Assocs. Ltd. P'ship*, 165 B.R. 773 (S.D.N.Y. 1994)

[166] 11 U.S.C. § 1191(b).

[167] 11 U.S.C. § 1129(a)(11)

[168] *See Matter of T-H New Orleans Ltd. P'ship,* 116 F.3d 790, 801 (5th Cir. 1997).

[169] *In re Lakeside Glob. II, Ltd.*, 116 B.R. 499, 507 (Bankr. S.D. Tex. 1989).

a peculiarly fact intensive inquiry that involves a case-by-case analysis, using as a backdrop the relatively low parameters articulated in the statute.[170]   To confirm a plan, the bankruptcy court must make a specific finding that the plan as proposed is feasible.[171]

For reasons discussed infra, the Modification fails to satisfy § 1129(a)(11).

### l.   The Modification satisfies § 1129(a)(12)

Section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan[.]"[172]   Under § 507, such fees are afforded priority as administrative expenses.[173]   The Modification provides for the payment of such fees on the effective date and thereafter, as may be required.[174]

Accordingly, the Modification satisfies § 1129(a)(12).

### m.  The Modification satisfies § 1129(a)(13)

Section 1129(a)(13) requires that a plan provide for "the continuation of payment of all retiree benefits, at the level established pursuant to § 1114 of the Bankruptcy Code at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits."   Pursuant to the Modification, this section is inapplicable to the instant Debtor.[175]

Accordingly, the Modification satisfies § 1129(a)(13).

### n.  The Modification satisfies § 1129(a)(14)

---

[170] *Id.*; *In re Star Ambulance Serv., LLC*, 540 B.R. 251, 266 (Bankr. S.D. Tex. 2015)
[171] *In re M & S Assoc., Ltd.,* 138 B.R. 845, 848 (Bankr. W.D. Tex. 1992).
[172] 11 U.S.C. § 1129(a)(12)
[173] 11 U.S.C. § 507(a)(2)
[174] ECF No. 210, 223.
[175] *Id.*

Section 1129(a)(14) of the Bankruptcy Code requires that if the debtor is mandated by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor must have paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.[176]  Here, Debtor is not required by a judicial or administrative order, or by statute, to pay any domestic support obligation.

Accordingly, the Modification satisfies § 1129(a)(14).

**o.   The Modification need not satisfy § 1129(a)(15)**

Section 1129(a)(15) requires that if the debtor is an individual, and the holder of an allowed unsecured claim has objected to confirmation of the plan, the property to be distributed to the holder must be not less than the value required by § 1129(a)(15).[177]  However, § 1129(a)(15) does not apply to debtors who are not individuals or plans confirmed under § 1191(b).  Debtor is not an individual.

Accordingly, the Modification satisfies § 1129(a)(15).

**p.   The Modification satisfies section 1129(a)(16)**

Section 1129(a)(16) requires that all transfers of property under the plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation of trust.[178]  Here, upon review, all transfers of property under the Modification will be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation of trust.

---

[176] 11 U.S.C. § 1129(a)(14)
[177] 11 U.S.C. 1129(a)(15).
[178] 11 U.S.C. § 1129(a)(16).

Accordingly, the Modification satisfies § 1129(a)(16).

In sum, Debtor's Modification fails to satisfy §§ 1129(a)(1), (2), (3), (7), and (11). Notwithstanding, the Court will next consider if Debtor has met the cramdown requirements under § 1191(b).  As discussed, confirmation under § 1191(b) requires that (1) the plan/modification "does not dis-criminate unfairly, and (2) is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."[179]

### q.  Whether the Modification discriminates unfairly

Here, no party in interest raised an objection that the Modification discriminates unfairly, so the Court will focus on whether it is fair and equitable.

### r.  Whether the Modification is fair and equitable

"Fair and equitable" under § 1191(b) is statutorily defined in § 1191(c).  Section 1191(c) provides, in relevant part:

> (c) Rule of construction.--For purposes of this section, the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:
> …
>     (2) As of the effective date of the plan--
>         (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan…
>     (3)(A) The debtor will be able to make all payments under the plan; or
>     (B)(i) there is a reasonable likelihood that the debtor will be able to make all payments under the plan…[180]

Trustee and BankUnited raise two arguments for why the Modification is not fair and equitable, to wit: (a) that the Modification does not meet the disposable income requirement under §

---

[179] 11 U.S.C. § 1191(b).
[180] 11 U.S.C. § 1191(c).

1191(c)(2)(A),[181] and (b) that there is not a reasonable likelihood that Debtor will be able to make all payments under the plan as required under § 1191(c)(3).[182]  The Court will address each objection in turn.

### i.   Whether The Modification meets the disposable income requirement under § 1191(c)(2)(A)

Section § 1191(c)(2)(A) requires that "the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan…"[183]  Trustee asserts, "…[t]he modified plan… contemplates not making plan payments for a period of at least three months.  By its own terms the Modification fails the standard for confirmation requiring Debtor's projected disposable income for at least three years to be applied to make payments under the Plan."[184]  The Court disagrees.  The Modification proposes to cure the missed payments and devote all projected disposable income to make payments under the Modification[185]  for a period of fifty-seven months (sixty minus the three missed months),[186] which is more than sufficient to satisfy § 1191(c)(2)(A).

Accordingly, Trustee's and BankUnited's objection that the Modification does not satisfy § 1191(c)(2)(A) is overruled.

### ii.   Whether the Modification is fair and equitable under § 1191(c)(3) because there is not a reasonable likelihood Debtor will be able to make all plan payments.

---

[181] *See* ECF Nos. 215-16.
[182] *See* ECF Nos. 215-16.
[183] 11 U.S.C. § 1191(c)(2)(A).
[184] ECF No. 215 at 5, ¶ 21.
[185] ECF No. 210 at 2; 210-2.
[186] 11 U.S.C. § 1191(c)(2)(A). *See* ECF No. 210-2.

Section 1191(c)(3), often referred to as the feasibility test, requires that "[t]he debtor will be able to make all payments under the plan… or… there is a reasonable likelihood that the debtor will be able to make all payments under the plan."[187]  This requirement fortifies the more relaxed feasibility test that § 1129(a)(11) contains.[188]  Section 1129(a)(11) requires only that confirmation is not likely to be followed by liquidation or the need for further reorganization unless the plan proposes it.[189]  The feasibility requirement for confirmation under § 1191(c) requires a showing that the debtor can realistically carry out its plan.[190]  Though a guarantee of success is not required, the court should be satisfied that the reorganized debtor can stand on its own two feet.[191]

Trustee and BankUnited jointly make five assertions that go to the feasibility of the Modification which are (1) Debtor has had a checkered financial history and has failed to show that it can generate sufficient revenue to make plan payments;[192] (2) Debtor failed to make Plan payments in July and August 2022;[193] (3) Debtor's modified projections of revenue[194] ("*Modified Projections*") are overly optimistic because they contemplate business immediately returning to normal starting in September and the HISD contract is not a guarantee of revenue;[195] (4) Debtor's unpaid financial obligations, and (5) deficiencies in the Modification.[196]

The Court will consider each in turn.

### 1. Debtor's financial history and ability to make plan payments

---

[187] 11 U.S.C. § 1191(c)(3).
[188] *Compare* 11 U.S.C. § 1129(a)(11) to § 1191(c)(3).
[189] See 11 U.S.C. § 1129(a)(11).
[190] *In re Pearl Res. LLC*, 622 B.R. 236, 269 (Bankr. S.D. Tex. 2020).
[191] *Id.*
[192] ECF No. 215 at 5, ¶ 22; ECF No. 216 at 4-5, ¶ 14.
[193] ECF No. 215 at 4-5, ¶ 20; ECF No. 216 at 4-5, ¶ 14.
[194] ECF No. 210-2.
[195] ECF No. 215 at 2-3, ¶ 15; 216 at 5, ¶ 16.
[196] *See* ECF Nos. 215-16.

Trustee and BankUnited jointly assert that Debtor's financial history shows that it is incapable of generating sufficient revenue to make plan payments.[197]  It is undisputed that Debtor has faced numerous unexpected challenges over the years that have resulted in fiscal difficulties including Hurricane Harvey, Covid-19 related shutdowns, and the instant broken down HVAC units.[198]  While the Court is sympathetic to the unforeseen challenges that Debtor has faced, prudent management must also come to expect and prepare for unexpected emergencies.  Debtor's Plan was confirmed March 18, 2022, and only two payments were timely remitted after that date before disruptions began.[199]  The fact that only two payments were made under the plan before Debtor sought to further reorganize, and that Debtor has generally demonstrated an inability to whether any business disruption without seeking further relief in this Court, raises uncertainties as to the ongoing feasibility of the enterprise.

Accordingly, Trustee and BankUnited's objection that Debtor's financial history shows that it is incapable of generating sufficient revenue to make plan payments has merit and is sustained.

### 2.   Debtor's failure to make Plan payments in July and August 2022

Trustee and BankUnited assert that Debtor made no attempt to service debt in the months of July and August of 2022.[200]  As discussed, Debtor's Actual Revenue suggests it was capable of doing so.[201]  All businesses face periods of financial uncertainty, often as a result of unexpected external forces.  Successful businesses must be able to weather the storm occasionally, and

---

[197] ECF No. 215 at 5, ¶ 22; ECF No. 216 at 4-5, ¶ 14.
[198] ECF No. 210 at 1-2.
[199] ECF No. 183; 215 at 1, ¶ 3.
[200] ECF No. 215 at 1, ¶ 4-5.
[201] ECF No. 222.

Debtor's immediate inability or unwillingness to make a payment, even a partial payment, for the months of July and August of 2022 is the result of either extreme financial precariousness or bad faith.  Either way, it does not bode well when considering the feasibility of this modification. Debtor's HVAC failure, while perhaps not entirely foreseeable, is still a fairly unextraordinary event.

Accordingly, Trustee and BankUnited's objection regarding the failure to make plan payments in July and August 2022 is sustained.

### 3.  Debtor's Modified Projections

Debtor's Modified Projections also give some cause for concern.  At the Hearing, Mr. Ahmed testified that only one customer cancelled their membership during the months of July and August of 2022, and that it was unrelated to the HVAC issue.[202]  Mr. Ahmed asserted that all other members merely paused their memberships, and he believes that they will all return starting in September of 2022, thus restoring all lost revenue as Debtor's projections suggest.[203]  Mr. Ahmed also testified that all members who paused their memberships have one month to decide if they will resume their membership.[204]

The Court finds Debtor's assertions both optimistic and perplexing.  If members only have one month to determine if they will resume their memberships after pausing, then many members must have already made their decision prior to the Hearing if they were to resume or not if the disruption began in late June of 2022  The Court is ultimately not in a position to speculate how much of Debtor's loss in revenue will be permanent (or at least persist for some period of time),

---

[202] August 18, 2022, Min. Entry.
[203] August 18, 2022, Min. Entry.
[204] August 18, 2022, Min. Entry at 12:29.

but it is certainly a non-zero number given the nearly two-month interruption in business. The Court also fails to understand why payments couldn't have resumed in September if revenue was supposed to be completely restored by then. The Court also notes, as discussed in greater detail *infra*, that there are significant expenses that do not appear on the Debtor's Modified Projections.

Trustee and BankUnited also objected to Debtor's optimism regarding the HISD contract. At the Hearing, Mr. Ahmed testified that while the HISD contract does not represent a firm commitment from the school district, that nonetheless 38 students have already signed up for the program this year at a rate of $550 per student.[205] Since no evidence was submitted to rebut Mr. Ahmed's testimony with regard to the HISD contract, the Court will accept that the after-school revenue projections are reasonable revenue forecasts.

Accordingly, Trustee and BankUnited's objection  regarding the Modified Projections is with merit as it relates to the loss of revenue associated with the HVAC disruption and is sustained, and without merit as it relates to the HISD contract and is overruled.

### 4.  Debtor's unpaid financial obligations

Trustee and BankUnited both  assert that Debtor has failed to meet its financial obligations under the Plan.  Specifically, Trustee asserts that Debtor has failed to timely pay the Trustee's fees and that fees continue to accrue unpaid.[206]  BankUnited further asserts that Debtor has failed to make payments into the Fund contemplated by the Plan,[207] Debtor has failed to keep up with the

---

[205] August 18, 2022 Min. Entry.
[206] ECF Nos. 215-16.
[207] ECF No. 216 at 5, ¶ 15.

tax escrow obligations under the Plan;[208] and Debtor's Modification does not provide for a cure to the missed payments in June, July, and August of 2022.[209]

As to whether Trustee's fees have not been paid, the uncontroverted evidence adduced at the Hearing demonstrates that Debtor's failure to pay the Trustee's fees was born from a misunderstanding.[210] Mr. Ahmed testified that Debtor has since sent $3,000 to the Trustee to cover fee arrearages.[211] Notwithstanding, Trustee indicated that $3,100 in pre-confirmation administrative expenses were still owed to her as of the date of the Hearing.[212]

Accordingly, Trustee's objection that Debtor has failed to timely pay the Trustee's fees is sustained.

As to whether Debtor has failed to make payments into the Fund, as discussed at length above, Debtor failed to provide any explanation as to why payments were not made into the Fund. The Fund was created specifically to safeguard against unexpected business circumstances such as those that led to filing this Motion to Modify.[213]

Accordingly, BankUnited's objection regarding Debtor's failure to escrow for the Fund is sustained.

BankUnited asserted in its Objection that Debtor failed to pay the entire escrow for the real and personal property tax obligations under the Plan for the months of April and May of 2022.[214] However, BankUnited failed to put on any evidence to support its allegation or renew this concern at the Hearing.

---

[208] ECF No. 216 at 3, ¶ 8.
[209] ECF No. 216 at 4-5, ¶ 14.
[210] August 18, 2022, Min. Entry.
[211] August 18, 2022, Min. Entry at 12:17.
[212] August 18, 2022, Min. Entry at 12:17.
[213] ECF No. 165.
[214] ECF No. 216.

Accordingly, BankUnited's objection as it pertains to the allegation that Debtor failed to pay the real and personal property tax escrow for the months of April and May of 2022 is overruled.

As to whether Debtor has failed to keep up with the tax escrow obligations for the months of July and August of 2022,[215] Debtor's counsel stated that the escrow arrearages would be paid upon receipt of a $13,000 state court bond Debtor previously posted.[216] Nevertheless, Debtor failed to put on any evidence as to when these funds would be received or when the arrearages would be paid other than vaguely indicating in its Modification that the funds would be released upon confirmation of the Modification.[217]

Accordingly, BankUnited's objection regarding Debtor's failure to keep up with the tax escrow obligations for the months of July and August of 2022 is sustained.

As to whether Debtor's Modification fails to provide for a cure to the missed payments in June, July, and August of 2022, Debtor's Modification does propose to make up the July-September 2022 Plan payment arrearages over 45 months.[218]

Accordingly, BankUnited's objection  as it relates to the failure to cure Plan payments is overruled.

### 5.  Deficiencies in the Modification

---

[215] August 18, 2022, Min. Entry at 12:25.
[216] August 18, 2022, Min. Entry.
[217] ECF No. 210-1 at 29.
[218] ECF No. 210-1 at 13.

Trustee and BankUnited assert several deficiencies with the Modification.[219] Specifically, Trustee asserts that the Modification does not explain how the Defaults will be addressed.[220] BankUnited further asserts that Debtor has failed to provide an accounting of the HVAC replacement costs, and that the reduction in value of BankUnited's collateral renders the Modification not fair and equitable.[221]

As to whether the Modification fails to explain how the Defaults will be addressed, the Court's interpretation of Debtor's Modification, in conjunction with evidence provided at the Hearing, is that it proposes to cure both Defaults.[222]  For reasons discussed supra, this cannot be done.

Accordingly, Trustee and BankUnited's objection as it relates to the Plan Defaults is sustained.

As to whether Debtor has failed to provide an accounting of the HVAC replacement costs, BankUnited's concern that Debtor has failed to provide an accounting of the HVAC replacement costs has since been resolved, as Debtor provided this accounting at the Hearing.[223]  Although, as discussed in greater depth infra, the debt incurred to purchase the HVAC replacements does also bear on the feasibility of Debtor's Modification, as this debt will also need to be serviced in addition to outstanding obligations.

---

[219] Trustee also notes in the background section of her Objection that Debtor has not been submitting timely quarterly operating reports as required under the Plan. 11 U.S.C. § 1106(a)(7) provides that, "[a] trustee shall…after confirmation of a plan, file such reports as are necessary or as the court orders…" Debtor's failure to file timely quarterly reports as ordered by this Court does not speak directly to feasibility under § 1191(c)(3), but nonetheless constitutes an additional issue that casts doubt on Debtor's ability to adhere to the terms of the Plan, or any modification thereof.
[220] ECF No. 215 at 4-5, ¶ 20.
[221] ECF No. 216 at 6, ¶ 18.
[222] ECF No. 210 at 26, ¶(d); August 18, 2022, Min Entry at 12:32.
[223] ECF No. 222-1.

Accordingly, BankUnited's objection as it relates to the HVAC replacement costs is moot.

As to whether the reduction in value of BankUnited's collateral renders the Modification not fair and equitable, BankUnited fails to elaborate or provide a basis in law or fact sufficient to allow the Court to assess how the alleged loss in value in its collateral renders the Modification not fair and equitable.

Accordingly, BankUnited's objection as it relates to the loss in value in its collateral is overruled.

In conclusion, any one of these failures taken in isolation do not render the Modification infeasible, but taken together, they paint a clear picture that Debtor has consistently been unable to or unwilling to adhere to the terms of the Plan, and Debtor has not carried its burden to show that the Modification is feasible.

Accordingly, Trustee and BankUnited's objection that the Modification is not fair and equitable under § 1191(c)(3) because there is not a reasonable likelihood Debtor will be able to make all plan payments is sustained.

For all of the reasons discussed supra, Debtor has failed to show that it has met the requirements to modify its Plan under § 1193(c). As such, the Modification is denied.

## IV.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED September 28, 2022

Eduardo Rodriguez
United States Bankruptcy Judge